**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

June 23, 2020

**BY ECF AND EMAIL**
Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square Room 2201
New York, New York 10007

**Re:  United States v. Juan Aracena de Jesus**
       **20 Cr. 19 (PAE)**

Dear Judge Engelmayer,

　　I respectfully write in anticipation of Juan Aracena's sentencing hearing scheduled for July 1, 2020. Counsel has not yet received the first draft of his Presentence Report, and it is my understanding that there will be only one final draft submitted to the Court one week prior to sentencing.

　　When Mr. Aracena entered his guilty plea, he did so pursuant to a <u>Pimentel</u> letter provided to counsel from the Government. Based on the Government's calculations, the applicable Sentencing Guidelines Range is 30 to 37 months incarceration. For the reasons set forth more fully below, we respectfully request that the Court impose a sentence of Time Served. Mr. Aracena will have been incarcerated for more than 6 months at the time of sentence for this non-violent crime, while being detained under extremely harsh conditions of confinement due to the COVID-19 pandemic, and prior to that a total jail lockdown for more than 2 weeks during a search for contraband. His reason for returning to the United States, following a frantic call to the Dominican Republic from his wife begging him to return, mitigates his illegal conduct. At

Honorable Paul A. Engelmayer                June 23, 2020
United States District Judge                Page 2

**Re:  United States v. Juan Carlos Aracena de Jesus**
      **20 Cr. 19 (PAE)**

the completion of his sentence he will be removed from the United States and returned to the Dominican Republic.

### A Sentence Of Time Served Is Warranted

Juan Aracena was deported from the United States on September 15, 2015. Prior to his deportation, he resided in the this country as a Lawful Permanent Resident. He had no expectation of returning to the United States unlawfully, despite the fact that his two children lived here with their mother. He has one child living in the Dominican Republic and several family members. He received a frantic phone call from the mother of his two children which changed the course of his life and brings him before this court. Mr. Aracena no longer wanted to waste his life by spending time in jail. He had served a lengthy jail sentence which resulted in his deportation. He was almost 40 years old and knew that if he were incarcerated again, his family would suffer as much as he would.

In the phone call from his wife, she advised him that his oldest daughter, Eileen, was in serious trouble. She was attending high school in New Brunswick, New Jersey. However, she was having grave problems emotionally and academically. She was getting into fights with other students. She was failing academically. She was cutting classes and not attending school. Her mother did not know what to do to stop what she saw as a disastrous free fall which seemed extremely destructive. She knew how much Eileen depended on her father, how close they were and how much his absence hurt her every day. So she called Eileen's father in the Dominican Republic and begged him to come to the United States. She told him that she was terrified about what could happen to their daughter and she did not know what to do to help her. She knew it would be illegal for him to return, just as Juan Aracena knew it would be illegal to return. He faced an impossible dilemma. He knows now that he made the wrong decision but one he couldn't refuse at the time he received the call. He chose to save his daughter and his family.

Mr. Aracena's daughter Eileen Lizardo has written to the Court explaining what happened to her and how important it was to have her father with her. His return ended up changing her life

for the better. See Defense Exhibit A, letter from Eileen Lizardo. She writes that she began high school at about the same time that her father was deported in 2015. She wasn't doing well, got into fights, was suspended, "didn't go to class and skipped school."

Eileen's mother spoke with school officials and it was decided that Eileen would transfer to a program at "The Adult Learning Center" for the New Brunswick School System, called C.A.R.E.S. (Creating Alternative Routes For Education Success). There were fewer students, and smaller classes. They specialized in helping students regain credits they lost due to failing grades or attendance issues. She transferred in February 2017, but nothing changed. "My dad was far and all I could get is a phone call. I was in desperate need of my dad." Exhibit A, letter from Eileen Lizardo.

Mrs. Lizardo wrote to the Court to explain what happened to her daughter and why she chose to change schools which everyone thought would help. "I didn't quite understand why she had changed so much but it was beginning to be too much for me to handle while I was also raising a toddler." See Exhibit B, letter from Mrs. Lizardo. Mrs. Lizardo goes on to write, "I was scared out of my mind that one day something would happen to her. I couldn't do this alone anymore. I had a conversation with Juan Aracena, her father, and expressed how terrified and helpless I was. I couldn't do this without him and I needed him here." Exhibit B.

Mrs. Lizardo advises that once Juan returned, "he immediately had a meeting with her [Eileen's] counselor to talk about how things could change." See Exhibit B. He began to become involved with every aspect of his daughter's academic life and her emotional state changed dramatically too. He was supportive and encouraging, and soon Eileen was motivated and focused. She ended up with her high school diploma from New Brunswick High School, graduating with honors. According to Eileen:

> "[H]e was really involved and a big part of why I ended up graduating with good grades.

```
Honorable Paul A. Engelmayer            June 23, 2020
United States District Judge            Page 4
```

**Re: <u>United States v. Juan Carlos Aracena de Jesus</u>**
   **20 Cr. 212 (PGG)**

> I am now a freshman in college majoring in
> political science. I wouldn't have done this
> without my dad's support and dedication to
> making sure I become the best version of myself.
> I understand him coming into the country illegally
> was wrong and it's selfish for me to say this
> but I needed my dad here."

<u>See</u> Exhibit A.

Eileen's counselor in the C.A.R.E.S. program has also written to the Court. <u>See</u> Defense Exhibit C. Jackleen Alvarado, MSW, LSW, CSSW, confirms the facts set forth above. Eileen was having academic and behavioral issues. She writes that Eileen spoke to her about how depressed she was because she missed her father and would come into her office and cry. Her father eventually came in to meet with her about Eileen's problems and became involved in ensuring her future success. "Overall, I can say that having her father in her life definitely played a factor in Eileen turning her behavior around and even her academics." Exhibit C. After graduation Eileen even obtained a scholarship from the New Brunswick Education Foundation.

Juan Aracena was presented before a Magistrate Judge on December 23, 2019. By the middle of March, 2020, the COVID-19 global pandemic began rapidly descending on New York City. The federal prisons, and the inmate population, began to feel the full force and brunt of the illness. Crowded into small areas, with communal dining, sleeping in close quarters, toilets shared by dozens of inmates, phones passed from one inmate to another, no bacterial wipes to disinfect surfaces, and food prepared by inmates who were starting to show signs of illness, the disease began to affect scores of inmates. (Through May 19, 2020, two full months into the pandemic, the MCC had only tested 10 inmates of the approximately 750 inmates at MCC, with 5 positive, as well as 45 staff positive, based on a letter from the Warden to Chief Judge Mauskopf of the E.D.N.Y). The Bureau of Prisons attempted to react by installing quarantines, locking down all inmates, prohibiting contact with lawyers and family, allowing showers once every three days, and no clean clothing for up to a week.

Honorable Paul A. Engelmayer          June 23, 2020
United States District Judge           Page 5

**Re:   United States v. Juan Carlos Aracena de Jesus
        20 Cr. 19 (PAE)**

Mr. Aracena advises me that he was only let out of his cell during quarantine for short periods of time every 2-3 days. Sometimes he couldn't shower because the water was too cold. For over three months, continuing to date, inmates like Mr. Aracena suffered extremely harsh conditions of confinement.

Eventually Mr. Aracena became extremely ill. His temperature rose and he suffered from severe headaches, weakness, and a loss of taste and smell. He felt sharp pains and had trouble breathing. Despite exhibiting these symptoms, he was never tested for COVID-19, continually asking to see a doctor. His roommate was even sicker for a while until he was removed. He thought that he was going to die in prison and was quarantined with almost no movement for a period of time. Mr. Aracena says that in the past three months he has lost approximately 20 pounds. These amount to conditions of confinement which historically have played a role in the court's determination of an appropriate sentence.

In addition, from approximately late February until the pandemic caused lock down conditions, the MCC had already been in lock down because the prison was conducting an investigation to search for a firearm that had been smuggled into the MCC. In this preceding period, there were no social visits, no attorney visits, no phone calls, limited time out of cells, and for approximately 8 days, there was a lock down for 24 hours per day, 7 days per week. That was characterized by cold sandwiches for food, no clean clothes, no contact with the outside world and limited availability to shower.

As a matter of law, The Second Circuit has held that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." United States v. Carty, 264 F.3d 191, 196 (2d Cir. 2001). District Court judges in the Southern District of New York have previously granted departures on this basis. In United States v. Mateo, 299 F.Supp.2d 201 (S.D.N.Y. 2004), Judge Marrero downwardly departed from the Guidelines Range nine levels on the grounds of harsh pre-sentence confinement conditions and extraordinary family circumstances. The defendant was pregnant while incarcerated. She suffered labor pains for over 15 hours before assistance arrived. She was afraid and in severe pain. She eventually gave birth in

Honorable Paul A. Engelmayer  June 21, 2020
United States District Judge  Page 6

**Re:  United States v. Juan Carlos Aracena de Jesus**
       **20 Cr. 19 (PAE)**

the prison without medication. Prior to the birth, she had also been subjected to sexual harassment on one occasion.

Judge Marrero's rationale in finding that a departure was warranted for harsh pre-sentence confinement conditions is equally applicable to Mr. Aracena. He found that the trauma suffered by the defendant during custody, "the full effects of which can never be comprehensively gauged, has inflicted forms of pain and suffering that have effectively enhanced, to a disproportionate degree, the level of punishment contemplated to be experienced by inmates in the typical case during the period of incarceration prescribed by the Guidelines for [the] offense." Id. at 212.

in United States v. Salvador, 2006 WL 2034637 (S.D.N.Y.), the Court found that unsanitary conditions and a lack of food were among the reasons justifying a departure for incarceration in the Dominican Republic while awaiting extradition to the United States. And in United States v. Francis 129 F.Supp. 2d 612, 619, (S.D.N.Y. 2001), the District Court

downwardly departed due to the conditions of pre-sentence detention, finding that the defendant had suffered "extraordinary stress and fear" while incarcerated in a state correctional facility as a federal detainee.

We do not seek a downward departure. In evaluating the §3553(a) factors in this case, the pandemic and its effect on Mr. Aracena must be considered in the determination of whether a variance is warranted. We believe it is. Following any sentence imposed by the Court, other than Time Served, under current BOP policy, Mr. Aracena will not be designated and moved from the MCC during the course of the pandemic. A policy which will continue to expose him to the harsh conditions of detention for many months to come. A sentence of Time Served will hasten his removal from the MCC and start the process leading to his deportation.

In *United States v. Torres*, 87 Cr. 593 (SHS), 2020 WL 2815003  (S.D.N.Y. June 1, 2020), Judge Stein adopted the argument echoed by many other scientists as well as Attorney General Barr (in his Memorandum to the Bureau of Prisons dated

Honorable Paul A. Engelmayer                    June 23, 2020
United States District Judge                    Page 7

**Re:  United States v. Juan Carlos Aracena de Jesus**
      **20 Cr. 19 (PAE)**

April 3, 2020), that realistically, the best way to mitigate the damage caused by COVID-19 and reduce the death toll is to decrease the jail population. *Citing United States v. Nkanga*, 18 Cr. 713 (JMF), 2020 WL 1529535 at *1 (S.D.N.Y. March 31, 2020). In *Nkanga*, *Id.* at *1, Judge Furman also recognized that "the country faces unprecedented challenges from the novel caronavirus pandemic. Those detained in jails and prisons face particularly grave danger." Other Judges in this District including this Court, have recognized that the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals. *See United States v. Scparta*, 18 Cr. 578 (AJN), 2020 WL 191048 at *1 (S.D.N.Y. April 20, 2020); *United States v. Nkanga*, supra, 2020 WL 1529535 at *1; *United States v. McKenzie*, 18 Cr. 834 (PAE), 2020 WL 1503669 at *3 (S.D.N.Y. March 30, 2020); *United States v. Torres*, supra 2020 WL 2815003.

   Judges within this district have also considered the impact of COVID-19 in the prison and its effects as a 3553(a) factor. Several have reduced sentences based on the pandemic and harsh pretrial conditions of detention. *E.g. See United States v. Morgan*, 19 Cr. 209 (RMB)(S.D.N.Y. May 5, 2020)(cutting the sentence to less than half of the low end of the Guidelines based in part on conditions at MDC during the pandemic and

condemning the conditions at MCC and MDC prior to the current crisis); *United States v. Casillas*, 19 Cr. 863 (VSB),(S.D.N.Y. May 4, 2020)(reducing the length of the sentence in part based on conditions at MCC during the COVID-19 crisis); and *United States v. Pierson*, 14 Cr. 855 (LTS)(S.D.N.Y. May 4, 2020)(same for defendant detained at MDC).

   Mr. Aracena was born in 1980 and grew up in the Dominican Republic, under conditions which reflected the family's impoverished economic means. The family was extremely poor. He first met has father when he was 14 years old. His mother was a housewife and the family was supported by his grandfather. He has 3 children, two live with their mother in New Jersey, and one lives with his mother in the Dominican Republic. He originally entered the United States in 1994, and became a Legal Permanent

Honorable Paul A. Engelmayer						June 23, 2020
United States District Judge						Page 8

**Re:	United States v. Juan Carlos Aracena de Jesus**
	**20 Cr. 19 (PAE)**

Resident. He was deported following the completion of his criminal cases in 2015.

Over the years he has had jobs in construction, and for a shipping company. See Defense Exhibit D, letter from JOCHI Construction. He also worked for a Real Estate firm. His future plans when he returns to the Dominican Republic is to buy cars damaged in accidents, repair them and sell them. He will work with his father in this business. Both are mechanics.

Mr. Aracena is not proud of his criminal history. When he was 20 years old he was convicted of a misdemeanor, sexual misconduct. Three subsequent convictions resulted from two arrests for possession of narcotics, and a bail jumping charge for failing to return on one of those charges. He was sentenced on the same date, May 1, 2013 for all three cases and received concurrent sentences. While incarcerated he received his GED diploma. See Defense Exhibit E.

Mr. Aracena's mother, brother and family friends have also written to the Court and all agree that he is an excellent father and provider for his family. He has also worked with church groups at events and is generous and considerate. Defense Exhibit F.

**CONCLUSION**

Mr. Aracena was confronted with a moral dilemma following his deportation to the Dominican Republic. He received a frightened, panicked phone call from the mother of his oldest daughter. His daughter Eileen was in trouble and desperately needed the assistance of her father. Her mother was unable to help her and begged Juan to return to the United States even though she knew he would be returning illegally. Juan acceded to her request. His actions may have saved his daughter's future, but now places his own in jeopardy. On the precipice of severe depression, dropping out of high school, and worse, his daughter Eileen has now graduated from high school with honors. She is attending college with a scholarship. Juan Aracena acknowledges that he made the wrong decision to violate the law, but he could

Honorable Paul A. Engelmayer                June 23, 2020
United States District Judge                Page 9

**Re:  United States v. Juan Carlos Aracena de Jesus**
      **20 Cr. 19 (PAE)**

not live with himself if he had let his family down in their time of need.

     The price he has paid already is severe. He probably contracted COVID-19 in the MCC, and he thought he was going to die. He has been in isolation for lengthy periods of time and quarantined in his cell for almost 24 hours a day for months. His greatest desire is to return to the Dominican Republic to start a new business with his father so that he may work to support his family.

     As the prison system struggles to gain a foothold on the spread of COVID-19, the CDC continually presses for simple measures to win that battle. Social distancing, use of face masks, and frequent washing. These simple goals are often unachievable in our prisons due to overcrowding and communal living. The Attorney General of the United States as well as social scientists recommend that the BOP seek out those inmates that can be removed from the prison system in order to achieve a greater measure of social distancing. Juan Aracena is one inmate who meets that qualification. If he were to receive a sentence of Time Served, he will not be released into the general population, he will be deported.

                                         Respectfully submitted,
                                         /S/
                                         Robert M. Baum
                                         Assistant Federal Defender

cc:  Kaylan Lasky, Esq.
     Assistant United States Attorney